THE STATE, Defendant in Error, *vs.* McO'BLENIS, Plaintiff in Error.

1. A court has no authority to give a party time until the next term to file a bill of exceptions, without the consent of both parties entered of record.
2. No execution for costs can issue in a criminal case, while an appeal, with stay of proceedings, is pending.
3. Where several parties are jointly indicted, each party is only liable for his own costs.
4. Judgment for costs in a criminal case cannot be remitted by pardon.

*Error to St. Louis Criminal Court.*

At the June term, 1852, of the St. Louis Criminal Court, McO'Blenis and fourteen others were jointly indicted for riot. At the January term, 1853, trial was had, which resulted in the conviction of McO'Blenis, McBride, and five other of the defendants, and a fine for different amounts was assessed against each. The defendants, McO'Blenis and McBride, filed their motion for a new trial, which was overruled, and they prayed an appeal to the Supreme Court. The appeal was granted, with stay of proceedings, and on motion, time was given the defendants until the next term to file their bill of exceptions. At the next term, on the 14th of March, 1853, a bill of exceptions was filed. On the 19th of March, McO'Blenis filed the pardon of the governor, releasing him from the payment of the fines and costs assessed in the cause, except the fine assessed against himself, and his *pro rata* proportion of the costs, and the court made an order setting aside the appeal as to him. At the same time, he filed his motion for a separate taxation of the costs incurred by him. The motion was overruled, and an execution was ordered to issue against him for the fine and all the costs incurred in the cause. On the 17th of December, 1853, a rule was granted by the court upon the state, to show cause why the execution should not be quashed. After a hearing, the rule was discharged, and the defendant filed his bill of exceptions, and brought the case here by writ of error.

The record also contains the bill of exceptions filed on the 14th of March, 1853, upon which, upon the appeal of McBride, the judgment of the Criminal Court was reversed by the Supreme Court. (19 Mo. Rep. 239.)

*U. Wright* and *Barrets*, for plaintiff in error. 1. The appeal granted at the January term of the Criminal Court, suspended the execution of the judgment. 2. The order setting aside the appeal was void, as, after the appeal was granted, the Supreme Court alone had jurisdiction of the cause. 3. The judgment having been reversed by the Supreme Court, there was nothing upon which execution could issue. 4. If it be said that the reversal only operated upon the judgment as to McBride, then it is submitted that the whole record is now here by writ of error, showing on its face that the judgment is erroneous as to McO'Blenis for the same reasons for which it was reversed as to McBride.

*Clover*, (circuit attorney,) for the State.

SCOTT, Judge, delivered the opinion of the court.

1. The records present us with two cases for our revision. The one contains the original case against O'Blenis on an indictment for a riot, and the other, a case growing out of the first, on a motion to retax the costs.

We will notice these in their order. When the appeal was granted to O'Blenis, on the 26th of February, 1853, and a stay of proceedings ordered, that the opinion of the Supreme Court might be taken, it appears that on motion, time was given him till the next term of the court to file his bill of exceptions. We consider that the court had no authority to make this order, without the consent of both parties entered of record. Unless a bill of exceptions is signed during the term at which a cause is tried, it cannot be filed subsequently, without the consent of both parties to the suit. The bill of exceptions not having been taken within the proper time, it cannot be noticed; and as the error relied on for a reversal of the judgment

appears only on the face of the bill, there is no error in the record of the first trial of which O'Blenis can now avail himself. This point was not made in the case of McBride, who was jointly convicted with O'Blenis for the riot, and whose case was afterwards in this court.   This much as to the first case.

2.  As to the second, from what has been said, it would appear that the cause out of which the execution for costs had its origin, was pending in the Supreme Court, when the writ issued; for the appeal and order of suspension stayed the proceedings until the appeal was disposed of in the Supreme Court.   The want of a bill of exceptions did not impair the effect of the appeal in stopping the proceedings of the court below, but would only render it unavailable on the trial, as there would be no evidence of any error in the record of the inferior court.

This, then, will reverse the judgment below on the motion to quash the execution for costs, but in order that a final disposition may be made of the cause in the court below, an opinion will be given respecting the question of costs.

3.  We cannot see the principle on which one defendant in an indictment is liable for the costs of the other defendants, who may be jointly indicted with him, whether they are acquitted or convicted.   A defendant may call fifty witnesses, who are not wanted by another defendant jointly indicted with him, and is acquitted.   Shall the other defendant who may be convicted pay the costs of all these witnesses?   There is no privity between offenders, as in the case of joint contractors, which makes one liable for the costs of the others.

At common law, the state neither recovered nor paid costs in criminal cases.   Each party was liable for his or her own expenses.   In a civil action against several defendants for a joint wrong, there was but one judgment for costs, and that might be collected from any one of them, and he would not be entitled to contribution from the others.   But, in such case, there could be but one trial, and the object of the suit is the reparation of the injury done to the plaintiff, not the reformation of the defendants.   Public prosecutions are carried on for a different

purpose. The reformation of the offender is one of the motives of prosecutions for offences. Justice, therefore, requires that each delinquent should be liable for his own offences, and that he should not be liable for the costs of prosecuting or defending others. There is nothing in any statute that we have seen, that makes an offender liable for any other than the costs which may have been incurred by him, or on his account.

The statute, section 15, article 4, p. 869, (R. C. 1845,) enacts that, " where two or more persons are charged with having committed an offence jointly, all concerned shall be included in one indictment." The 23d section of article 6, p. 881, enacts that, " in cases other than felonies, defendants jointly indicted shall be tried separately or jointly, in the discretion of the court." The law never designed that the payment of costs should be at the discretion of the judge, as to whether he would have a joint or separate trial of the offenders. It did not design that, where the judge ordered a separate trial, the costs should be separate, and that when the trial was joint, the costs should be joint. It was intended to have but one rule in the matter, and that was the rule of justice and equity, that each defendant should be liable for his own costs. Several defendants may be joined in one indictment ; some may take a change of venue to one county, some to another, and they may all be acquitted ; but one who has not changed the venue, shall this one be liable for all the costs of all these trials ? So, a defendant may be joined with several others in an indictment. He may object to a separate trial, yet each of the others, against his will, may obtain one, and the party objecting is afterwards alone convicted: shall he pay the costs of all the trials ? The only answer to this is, the inconvenience or difficulty of apportioning the costs among the different offenders. We do not consider this any answer. It is very easy to keep an account of the services rendered for each defendant, and some of the charges would necessarily be common to all of them. Here are some fifteen men indicted for an offence ; they are all acquitted or discharged, after a short term of imprisonment, but

one, and he, under the construction of the law contended for, would be made liable for all the costs, amounting to a thousand dollars. This never could have been contemplated by the general assembly. The costs in such cases must be apportioned in an equitable way. Nor is it any objection to this view of the subject, that this indictment is for an offence in which a number must participate in order to make it, and therefore that they must necessarily be jointly indicted. The law designed that there should be but one rule for the taxing of costs in all criminal cases, where there were several indicted together, and that was that each should be liable for his own costs; and it would be strange that, because the clerk has failed to keep his account of fees in such way as to show this, that therefore all the costs should be taxed against one.

4. As to the matter of the pardon, it is evident that, after a judgment for costs, they cannot be remitted by pardon. Costs for which judgment has been given, are not remitted by a pardon of the offence, subsequent to the judgment, because there was an interest vested in private persons. (Cro. Car. 9 and 199. *Duncan* v. *Commonwealth*, 4 S. & Raw. 451. *Playford* v. *The Commonwealth*, 4 Barr, 144.)

In accordance with the views herein expressed, the judgment against O'Blenis for the riot will be affirmed, and the judgment on the motion to quash the execution for costs will be reversed, as the execution issued pending the appeal in this court. The other judges concur.